IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01771-KLM

MICHAEL E. ALLERTON,

    Plaintiff,

v.

GOVERNMENT PROPERTIES INCOME TRUST, L.L.C., a Delaware Limited Liability Company, and
THE RMR GROUP, L.L.C., a Maryland Limited Liability Company,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Brief in Support** [#38][1] (the "Motion"). Plaintiff filed a Response [#40], and Defendants filed a Reply [#41]. Pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 40.1(c), the matter has been referred to this Court for all purposes. *See* [#24]. The Court has reviewed the Motion, the Response, the Reply, the attached exhibits, entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#38] is **DENIED**.

**I. Summary of the Case**[2]

---

[1] "[#38]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The material facts are highly contested outside of what is included in Defendants' Statement of Undisputed Facts provided in the Motion [#38]. Accordingly, the remainder of the

-1-

This case pertains to an alleged slip-and-fall. Plaintiff worked as a security officer for Deco Security Services, Inc. ("Deco"), and qualifies as an "invitee" to the subject property. *Motion* [#38] at 4. At all relevant times, Defendant Government Properties was the owner of the property and Defendant RMR was the property management company, and each Defendant qualifies as a "landowner." *Id.* at 4-5. Defendant Government Properties entered into a lease with the United States of America, which included provisions regarding snow and ice removal from the property. *Lease* [#40-11] at 4. Defendants entered into a contract with a snow and ice removal company, SM Sweeping, in order to carry out the terms of the lease. *Service Contract* [#40-2]. SM Sweeping monitored weather conditions and serviced the property on an as-needed basis on weekends. *Tr. of Masotti Depo.* [#40-4] at 5; *Tr. of Harmon Depo.* [#40-3] at 6. The services included application of a material called Ice Slicer, which is applied to pavement in order to melt ice. *Tr. of Harmon Depo.* [#40-3] at 4.

At around 12:30 a.m. on Sunday, January 11, 2015, Plaintiff slipped and fell on black ice while walking down the incline of a concrete driveway during his patrol of the exterior of the property. *See Plaintiff's Responses to Interrogatories* [#40-5] at 2. An invoice shows that one ton of Ice Slicer was applied on the premises on Saturday, January 10, 2015. *Invoice* [#40-7] at 1. SM Sweeping could not verify whether Ice Slicer was applied to the driveway where the incident occurred. *Tr. of Harmon Depo.* [#40-3] at 7. A fellow security guard testified that he did not observe any snow removal or ice abatement activities on the property between 6:00 p.m. on Saturday, January 10, 2015, and 6:00 a.m. on Sunday,

---

facts are stated from the perspective of Plaintiff, the non-movant, and are stated in greater detail in the Analysis section below. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

January 11, 2015, nor was the gate arm permitting access to the driveway opened during that shift. *Tr. of Carr Depo.* [#40-8] at 9.

While the Complaint [#1] is unclear regarding the theory under which Plaintiff's claim arises, the parties' briefing demonstrates that Plaintiff is solely asserting his claim pursuant to the Colorado Premises Liability Act ("CPLA"). *See generally Compl.* [#1]. Defendants seek to dismiss Plaintiff's claim on the grounds that: (1) Plaintiff has failed to present evidence that Defendants knew or should have known of the alleged danger associated with the driveway, and (2) Plaintiff's claim is precluded by the Colorado Worker's Compensation Act ("CWCA").

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable trier of fact could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine

issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable trier of fact could find in his favor. *See Liberty Lobby*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmoving party must show the existence of a genuine dispute of a material issue by going beyond the allegations in its pleading and providing "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. To satisfy its burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 at 356 (3d ed. 1998).

### III. Analysis

**A.     Colorado Premises Liability Act**

Under the CPLA, landowners owe certain duties to those who enter onto the land depending on their status as a trespasser, licensee, or invitee. Colo. Rev. Stat. § 13–21–115(1.5)(a). The parties appear to agree, for the purposes of the Motion [#38], that Plaintiff qualifies as an invitee and that the Defendants both qualify as landowners. *See Motion* [#38] ¶¶ 1, 5; *Response* [#40] at 1. An invitee "may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Colo. Rev. Stat. § 13–21–115(3)(c)(I).

Whether a landowner should have known of a particular danger generally is a question of fact, not law. *See Vigil v. Franklin*, 103 P.3d 322, 326 (Colo. 2004) ("Whether an injured plaintiff is a trespasser, licensee, or invitee must be decided by the court, but the ultimate issues of liability and damages are questions of fact for a jury, or if none, for the trial judge."). However, a court may in certain instances grant summary judgment where a danger is so attenuated that no rational juror could find that a landowner should have known about it. *See, e.g.*, *Casey v. Christie Lodge Owners Ass'n, Inc.*, 923 P.2d 365, 367 (Colo. App. 1996) (holding that evidence that a storage door was repaired – without evidence of prior accidents involving the door, the reason for the repair, or that the repair created a hazard – was insufficient to create a genuine issue of material fact).

Here, Defendants contend that Plaintiff's CPLA claim fails as a matter of law because "the record is wholly devoid of any evidence that Defendants had actual or constructive knowledge that the subject driveway presented a danger prior to Plaintiff's alleged slip-and-fall." *Motion* [#38] at 8. Plaintiff argues that "the landlord obviously was aware of and recognized the potential hazard and danger that would be presented to

pedestrians from the accumulation of snow or ice on the walkways, sidewalks, and parking lots of the premises." *Response* [#41] at 4. As evidence of Defendants' general awareness of the potential danger that may be caused by snow or ice accumulation on the premises, Plaintiff points to the lease, which included provisions for snow and ice removal, and to the fact that Defendants entered into the contract for snow and ice removal with SM Sweeping.[3] *See Lease* [#40-11] at 4; *Service Contract* [#40-2].

Plaintiff also argues that evidence supports his contention that Defendants knew or should have known of the danger on the particular driveway in the early morning hours of January 11, 2015, the date of the incident. *See Plaintiff's Responses to Interrogatories* [#40-5] at 2. An Invoice dated January 12, 2015, provides the following information with respect to ice abatement services at "7201-7401 W. Mansfield Avenue," the address of the property:

> Wed Jan 7 (morn) - Frozen rain and snow with a low of 14 degrees. Full ice slicer and ice melt application in AM
>
> Thur Jan 8 (morn) - High of 58 / low of 15 caused melt/refreeze. Ice slicer and ice melt application in AM
>
> Fri Jan 9 (morn) - Frozen rain and snow with a low of 17 degrees. Full ice clicer and ice melt application in AM
>
> Sat Jan 10 (morn) - Ice melt as needed on a property-by-property basis for retail locations

*Invoice* [#40-7] at 1. The Invoice further provides that "1.0 ton" of Ice Slicer was applied

---

[3] Defendants do not appear to dispute Plaintiff's assertion that Defendants are liable for the actions of SM Sweeping. Indeed, landowners may not delegate their responsibility to maintain their premises in a safe condition. *Reid v. Berkowitz*, 315 P.3d 185, 192 (Colo. App. 2013) (citing *Kidwell v. K-Mart Corp.*, 942 P.2d 1280, 1282 (Colo. App.1996); *Jules v. Embassy Props., Inc.*, 905 P.2d 13, 15 (Colo. App.1995)).

on the premises on January 10, 2015. *Id.* Plaintiff refers to the deposition of Matthew Harmon ("Harmon"), one of the owners of SM Sweeping, who stated that the company's drivers are "instructed to drive the entire property and apply the Ice Slicer where necessary," but that Mr. Harmon was unable to state whether Ice Slicer was applied on January 10, 2015, to the driveway where the incident occurred. *Tr. of Harmon Depo.* [#40-3] at 5, 7. Plaintiff argues that the fact that a ton of Ice Slicer was applied on the property shows that Defendants actually knew or should have known of the existence of ice on the premises on the date of the incident. *Response* [#40] at 7.

Plaintiff also cites to the deposition of Robin Carr ("Carr"), a security officer who worked alongside Plaintiff from 6:00 p.m. on Saturday, January 10, 2015, until 6:00 a.m. on Sunday, January 11, 2015. *Tr. of Carr Depo.* [#40-8] at 3, 6. Mr. Carr stated that there had been melt-off on the driveway that day, which turned to ice as the temperature dropped. *Id.* at 7. He also explained that there was a gate arm blocking access to the driveway at issue, and that the gate arm would be opened by security personnel if requested by the snow removal contractor. *Id.* at 5. Mr. Carr further stated that the security personnel would open the gate arm prior to any request "if we saw them going back and forth to the north and south, as soon as we saw them on-premises . . . so they would do that dock area, because it's been such an issue." *Id.* at 6. Mr. Carr did not observe any snow removal or ice abatement activities during the shift when Plaintiff fell, nor was the gate arm requested to be opened, or actually opened during that shift. *Id.* at 9.

The evidence taken together creates a genuine issue of material fact with respect to whether Defendants knew or should have known of the condition of the driveway. Mr. Carr testified that there had been melt-off on the driveway on the day in question, and the

invoice demonstrates that temperatures were below freezing during the week leading up to the incident. *See id.* at 7; *Invoice* [#40-7] at 1. The invoice further shows that one ton of Ice Slicer was applied on the premises during the day leading up to Plaintiff's fall, indicating that icy conditions were identified in other areas of the property that day. *See Invoice* [#40-7] at 1. A trier of fact could find that knowledge of icy or potentially icy conditions on one paved surface indicates that there are similarly dangerous conditions on another paved surface on the same property. Additionally, Mr. Carr testified that he did not observe any ice abatement activity during his shift with Plaintiff, and that the gate arm blocking access to the driveway was not lifted, which tends to show that no Ice Slicer was applied to the driveway at least during the evening shift. *See Tr. of Carr Depo.* [#40-8] at 9.

Defendants rely heavily on *Casey*, where the Colorado Court of Appeals granted summary judgment because it found that the plaintiff failed to provide evidence of any prior accidents, or circumstances that may lead to accidents, involving the storage doors that struck the plaintiff in the shin. *Casey*, 923 P.2d at 367. Defendants argue that summary judgment should be granted in this matter because there is no evidence that Defendants had "any knowledge of a potentially dangerous condition *on the subject driveway* at any point in time prior to the alleged incident," since there has never been another known similar incident. *Motion* [#38] at 11 (emphasis added). However, this case is distinguishable from *Casey*. Whereas storage doors do not present obviously dangerous conditions, thus requiring evidence of prior accidents or specific circumstances that could lead to an accident, the danger here (formation of ice on paved surfaces during the winter in Colorado) is more inherently obvious. Furthermore, as discussed above, there is

evidence in the record that could ultimately weigh in Plaintiff's favor. Thus, the danger is not so attenuated that no reasonable trier of fact could find that Defendants should have known about it, and, therefore, a genuine dispute of material fact exists. *See Casey*, 923 P.2d at 367; *Vigil*, 103 P.3d at 326. Therefore, the Court declines to enter summary judgment in favor of Defendants on this issue.

**B.    Worker's Compensation Act**

"Under Colorado law, the exclusive remedy against statutory employers is workers' compensation insurance." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1224 (10th Cir. 2001) (citing Colo. Rev. Stat. §§ 8–41–102). Thus, the CWCA bars civil tort actions against an employer for injuries that are compensable under the CWCA. *See Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 n.2 (10th Cir. 2004) (citing Colo. Rev. Stat. §§ 8-41-102, 104). The CWCA provides in part: "Any person, company or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor . . . shall be construed to be an employer as defined in articles 40 to 47 of this title[.]" Colo. Rev. Stat. § 8–41–401(1). An employer qualifies as a "statutory employer" under the CWCA when "the work contracted out is part of the employer's regular business operation." *Finlay v. Storage Tech. Corp.*, 764 P.2d 62, 64 (Colo. 1988). "In applying this test, courts should consider the elements of routineness, regularity, and the importance of the contracted service to the regular business of the employer." *Id.*

Defendants contend that Plaintiff's claim is barred by the CWCA on the grounds that Defendants qualify as statutory employers because the work performed by Deco (Plaintiff's employer) was part of Defendants' "regular business." *Motion* [#38] at 14. Plaintiff disputes

the categorization of Defendants as statutory employers and argues that the CWCA bar does not apply. *Response* [#40] at 10-16.

The Tenth Circuit has held that "where the application of the state law bar is conceded, workers' compensation law provides the exclusive remedy and civil tort suits against the employer are barred (thus making such claims non-cognizable in state and federal courts)." *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1226 (10th Cir. 2004). On the other hand, when the parties dispute the factual basis of whether a statutory bar applies, it is "a waivable, affirmative defense that workers' compensation is a plaintiff's exclusive remedy." *Id.* at 1225 (collecting Colorado state law cases). In such cases, "the issue must be determined by the trier of fact." *Id.* at 1226. Here, the parties dispute whether Defendants constitute "statutory employers" under the definition of the CWCA. *Motion* [#38] at 14; *Response* [#40] at 10-16. Accordingly, the Court concludes that this issue must be determined by the trier of fact and declines to enter summary judgment in favor of Defendants on this issue.

## IV. Conclusion

IT IS HEREBY **ORDERED** that the Motion [#38] is **DENIED**.

Dated: September 20, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge